UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DELTA INN, INC., a domestic corporation,<br><br>Plaintiff,<br><br>vs.<br><br>HYUNDAI SECURITIES CO., LTD., a foreign corporation,<br><br>Defendant. | No. _____<br><br>**DELTA INN, INC.'S COMPLAINT AGAINST HYUNDAI SECURITIES CO., LTD. FOR VIOLATION OF THE UNITED STATES SECURITIES LAWS AND ADDITIONAL CLAIMS** |

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiff alleges as follows:

## I. NATURE OF THE ACTION

1.1. Delta Inn, Inc. ("Delta") has filed this lawsuit against Hyundai Securities Co., Ltd, ("Hyundai") to recover more than $2,650,000 of Delta's money that Hyundai lost due to its gross mismanagement of investment funds and its violations of United States securities laws. Hyundai, a foreign investment management firm located in Korea, solicited a $3,000,000 investment from Delta, located in the United States, in the late 1999. It did so without having registered with the United States Securities & Exchange Commission ("SEC") in clear violation of U.S. securities laws. Following Delta's investment, Hyundai recklessly invested the funds in high-risk offshore companies that were not suitable for Delta and were not authorized by Delta. Hyundai then proceeded to "churn" Delta's account, generating excessive fees for itself, and creating massive losses for Delta. For years, Hyundai management promised to recover the losses and promised Delta that the funds were not at long-term risk. The losses were never recovered, and, eventually the account was closed in 2014 with $317,714 returned to Delta – a nearly ninety percent loss in initial investment value.

1.2. The actions Hyundai in soliciting investment from parties within the United States exposes it to the jurisdiction of this Court.

1.3. The actions of Hyundai in recklessly managing Delta's money and fraudulently investing Delta's money without proper authorization amounts to violations of United States securities laws as well as the laws of the State of Washington.

1.4. Delta sues to recover the losses it has incurred, together with improper commissions Hyundai took and interest on all sums, from Hyundai for its illegal conduct.

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## II. PARTIES

1. Plaintiff Delta Inn, Inc. is a domestic corporation duly organized and existing under the laws of the State of Oregon, with its principal place of business in Lynnwood, Washington. Delta is a family-run business that manages a number of real estate properties in the Pacific Northwest. Delta is owned and managed by Mr. Sung L. Kim.

2. Upon information and belief, Defendant Hyundai Securities is a Korean corporation, organized and existing under the laws of the Republic of Korea, with its principal place of business in Seoul, Korea.

## III. JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C § 1331 and 1332. Hyundai is subject to the jurisdiction of the United States and of this Court because it solicited investment in the United States, of a United States corporation (Delta), for investment abroad (in Korea). It did so with full knowledge and understanding of the registration requirements under the United States securities laws and in direct violation of those laws.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because it is the judicial district where a substantial part of the events or omissions giving rise to the claim occurred, including where, as set forth below, Hyundai enticed investment from Delta by soliciting its owner in this district, conducting phone calls with Delta's owner in this district, and sending marketing materials to Delta in this district and elsewhere within the United States.

## IV. BACKGROUND FACTS

5. In 1997 and 1998, the Republic of Korea was in the midst of a financial crisis. The country was on the verge of bankruptcy and required intervention from the International Monetary Fund to remain solvent. As part of a government-led effort to promote investment in Korea, government officials and representatives travelled to various points around the United States and the rest of the

COMPLAINT
No. _____

Corr Cronin Michelson
Baumgardner Fogg & Moore LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

world in hopes of convincing individuals and business (mostly foreign nationals of Korea) to invest in Korean companies.

6. In or around May of 1999, Mr. Kim attended an event at the Sheraton Hotel in Seattle where a number of officials and representatives from Korean government presented to Korean nationals living in the United States and persons of Korean decent living in the United States. The purpose of the presentation was to encourage those individuals to make investments within Korea and in Korean businesses.

7. Following that meeting (and Delta's expression of possible interest), a Korean representative from the meeting placed Mr. Kim in contact with an employee of Hyundai (Mr. Min Park), a Korean investment advisory and wealth management firm. Over the course of the next several months, Hyundai arranged telephone calls between Delta (in the United States) and Hyundai personnel (in Korea), sent marketing materials and company information to Delta in the United States, and even forwarded legal documents (in English) for Delta to review with counsel.

8. On information and belief, Hyundai was not (and has never been) registered as a broker-dealer with the United States Securities and Exchange Commission and cannot avail itself of the foreign broker-dealer exemption (Rule 15a-6) due to its conduct in inducing or attempting to induce securities transactions by person or company located in the United States (*i.e.*, Delta).

9. Ultimately, Hyundai forwarded to Delta a "Standing Agent Agreement" (that Hyundai had translated to English) for Delta to review and sign.

10. The Standing Agent Agreement includes a Power of Attorney provision which grants limited authority to Hyundai. The Power of Attorney expressly requires that the client (Delta) approve key transactions. Among other provisions, the Power of Attorney grants Hyundai authority:

> 1. **Upon my/our instruction**, to place an order, to acquire, receive, dispose of or transfer securities and to perform all necessary acts in relation thereto ....

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

3. To manage my/our cash balance **in accordance with my/our instructions** ....

6. To exercise **in accordance with my/our instructions** subscription rights allotted to me/us and to perform all acts necessary in connection with the exercise, sale, or transfer, **upon my/our instructions**, of subscription rights allotted to me/us.

11. Additionally, the Terms and Conditions in the Standing Agent Agreement contains the following provisions:

7. (Instructions) Unless otherwise expressly permitted by the Power of Attorney on the face hereof, the Proxy **shall obtain instructions from the Client before taking action on behalf of the Client**.

12. On behalf of Delta, Mr. Kim entered into the Standing Agent Agreement with Hyundai wherein Hyundai agreed to act as Delta's investment advisor and wealth manager. In connection with this Agreement, the Korean government granted permission for the investment to proceed; an investment that required Delta to transmit funds overseas to Hyundai for its safeguarding and professional stewardship.

13. In late 1999, Delta completed the paperwork to official open a managed brokerage account at Hyundai and returned the fully-executed Standing Agent Agreement to Hyundai. Delta entered into the brokerage agreement with Hyundai based on representations from Hyundai representatives that they would place Delta's funds in suitable low-risk, low-volatility investments.

14. In November 1999, Delta deposited $2,500,000 (US) into the Hyundai account. In December 1999, Delta deposited an additional $500,000 (US) into the Hyundai account. Delta deposited this money into the Hyundai account with the intent that it be invested in low-risk, low-volatility, growth-oriented investments. Delta conveyed this intent to Hyundai.

15. Following the deposit of Delta's funds, Mr. Min Park, a registered broker at Hyundai, placed Delta's funds into multiple high-risk, high-volatility investments. He did so without the authorization of Mr. Kim or Delta in direct violation of the Standing Agent Agreement and his duty as an advisor to place Delta only in suitable investments free from excessive risk and volatility.

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

16. Within the first four months under Hyundai's management, Delta lost <u>over $1,700,000</u>, or more than 50% of the original value of the investment. It was later discovered that the funds had been invested into some of the highest-risk, high volatility stocks possible. These investments were made without the assent of Mr. Kim or Delta and were completely unauthorized.

17. When Mr. Kim learned of the precipitous and unexpected decline in its investment during this short period of time, he complained to Hyundai. In response, Hyundai promised Delta that the value of the account would rebound and Delta would not lose any money.

18. By December 2000, Delta had lost <u>roughly $2,650,000</u> of its investment. Again, Hyundai promised Delta that the value would rebound. But it never did.

19. Over the course of the next fifteen years, Hyundai proceeded to execute numerous trades into and out of risky investments. Over the course of 15 years, Hyundai executed more than 750 trades, reaping commissions and fees for each transaction.

20. All of the trades made by Hyundai were made without the authorization or advance approval of Delta.

21. As a result of the continued risky investments and the excessive number of trades, any potential gains in the value of the account were erased by the fees and commissions or the decline in value of the investments.

22. After years of being told by Hyundai that the account would regain its original value, Delta directed that the account be closed in 2014.

23. At the time the account was closed, the assets in Delta's account were valued at a mere $317,714. This represented a loss of <u>nearly 90%</u> of the original investment value. During this same time span both Korean and International markets saw significant gains. For example, the S&P 500 gained more than 46% during this time period.

24. The near total loss of Delta's investment was a direct result of Hyundai's fraudulent mismanagement of Delta's funds.

COMPLAINT
No. _____

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## CAUSES OF ACTION

### First Cause of Action - Securities Fraud

**15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, and 17 C.F.R. § 240.15c1-7(a)**

25. Delta hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 24.

26. Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. §78j(b).

27. SEC Rule 15c1-7 includes acts "designed to effect" "any transactions or purchase or sale which are excessive in size or frequency in view of the financial resources and character of such account." 17 C.F.R. § 240.15c1-7(a)

28. Similarly, SEC Rule 10b-5 makes it unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security." 17 C.F.R. §240.10b-5.22.

29. Hyundai, by use of the means or instrumentalities of interstate commerce, or of the mails, in the offer and sale, and in connection with the purchase or sale, of securities, knowingly or recklessly: (a) employed devices, schemes or artifices to defraud; (b) obtained money or property by means of, or otherwise, made untrue statements of material fact, or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in transactions, acts, practices and courses of business which operated or would have operated as a fraud or deceit upon purchasers of securities and upon other persons.

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

30. As part and in furtherance of the violative conduct, Hyundai orchestrated the scheme to defraud Delta. For instance, Hyundai misrepresented, and failed to disclose, material information to Delta to induce it to invest significant sums of money and to maintain their brokerage account. After Delta had made sizeable investments, Hyundai executed numerous unauthorized trades, which were often unsuitable for the customer, and churned Delta's account. Delta's investments were depleted through trading losses and commission charges. Hyundai' actions and omissions satisfy the requirements of a claim under Section (b) and Rule 10b-5. Hyundai knowingly or recklessly participated in the fraudulent scheme. They also knowingly or recklessly made material misrepresentations and omissions to the plaintiff. By reason of the foregoing, Hyundai violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## Second Cause of Action - Breach of Contract

31. Delta hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 30.

32. Delta and Hyundai entered into a valid brokerage agreement which required Hyundai to trade all assets in Delta's account in a safe and reasonable manner and only upon express authorization from Delta.

33. Hyundai failed to obtain authorization from Delta for all actions taken with respect to Delta's account. Hyundai failed to trade the assets in Delta's account in a safe, reasonable, and low-risk manner.

34. As a result of Hyundai's breach of the brokerage agreement, Delta suffered damages in an amount equal to its entire investment loss, together with any applicable interest.

## Third Cause of Action - Breach of Fiduciary Duty

35. Delta hereby realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 34.

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

36. As the broker and custodian of Delta's assets, Hyundai Securities owed Delta a fiduciary duty.

37. Hyundai Securities' failure to obtain authorization from Delta for all actions taken with respect to Delta's account constitutes a breach of its fiduciary duty to Delta.

38. Hyundai Securities' failure to trade the assets in Delta's account in a safe, reasonable, and low-risk manner constitutes a breach of its fiduciary duty to Delta.

39. Hyundai Securities' failure to safeguard the assets of Delta and to instead engage in reckless and excessive trading patterns constitutes a breach of its fiduciary duty to Delta.

40. As a result of Hyundai Securities' breaches of fiduciary duties, Delta suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Delta prays for relief as follows:

i. For money judgment against each defendant, awarding to Delta damages in an amount to be proven at trial;

ii. For prejudgment interest at twelve (12) percent per annum on the liquidated sums from the dates of purchase to the date of judgment;

iii. For post judgment interest at twelve (12) percent per annum until paid in full;

iv. For statutory and other reasonable attorney fees and costs; and

v. For such other and further relief as the Court may deem just and equitable.

DATED this 3rd day of August, 2015.

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP

*s/ Steve Fogg*
Steven W. Fogg, WSBA 23528
Anthony Todaro, WSBA No. 30391
1001 4th Avenue, Suite 3900
Seattle, WA 98154-1051
sfogg@corrcronin.com
atodaro@corrcronin.com

COMPLAINT
No. _____

CORR CRONIN MICHELSON
BAUMGARDNER FOGG & MOORE LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900