The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DELTA INN, INC.,

          Plaintiff,

vs.

HYUNDAI SECURITIES CO. LTD, a
Korean corporation,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:15-CV-01222

**DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

**Note for motion: February 19, 2016**

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

III. DISCUSSION .......................................................................................................5

    A.   The Court Lacks Jurisdiction Over Hyundai Securities. ...........................5

        1.   The Court Lacks Jurisdiction Under
            Washington's Long-Arm Statute. .................................................5

        2.   The Court Lacks Jurisdiction Under Section 27
            Of The Securities Exchange Act......................................................10

    B.   The Court Should Dismiss This Action
        Under The Doctrine of *Forum Non Conveniens*. ...................................11

        1.   Korea Is An Adequate Alternative Forum. ...................................12

        2.   Public Factors Weigh In Favor Of Litigating In Korea. ...............12

        3.   Private Factors Weigh In Favor Of Litigating In Korea. ..............13

    C.   Delta Inn Fails To State A Claim Under
        The Federal Securities Laws. ...................................................................15

        1.   The Statutes On Which Delta Inn Relies
            Do Not Apply Extraterritorially And Do Not Apply Here. ..........15

        2.   Delta Inn Fails To Comply With
            The Applicable Pleading Requirements..........................................17

        3.   Delta Inn's Section 10(b) Claim Is Time-Barred.........................18

    D.   Delta Inn Fails To State A Claim Under
         The Washington State Securities Act. .......................................................20

    E.   Delta Inn Fails To State A Claim for Breach of Contract.........................20

    F.   Delta Inn Fails To State A Claim for Fiduciary Breach. ..........................21

    G.   Delta Inn Fails To State A Claim Under
        Washington's Consumer Protection Act....................................................22

IV.  CONCLUSION.....................................................................................................24

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- i -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AJ Mgmt. Consulting v. MBC FZ-LLC,*
  2014 WL 2878891 (N.D. Cal. June 24, 2014) ............................................................21

*Alaska Airlines, Inc. v. United Airlines, Inc.,*
  902 F.2d 1400 (9th Cir. 1990) ......................................................................13, 22

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).............................................................................................8

*Boschetto v. Hansing,*
  539 F.3d 1011 (9th Cir. 2008) .........................................................................5, 6

*Bowen v. Lancaster,*
  2008 WL 1986036 (C.D. Cal. Apr. 30, 2008) ...............................................6, 7, 9

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985)...........................................................................................6, 7

*Charm Floral v. Wald Imports, Ltd.,*
  2012 WL 424491 (W.D. Wash. Feb. 9, 2012).....................................................20

*Chengwu Zhao v. Guo Qiang Ye,*
  2014 WL 4851666 (D. Or. Sept. 29, 2014) .........................................................12

*Chengwu Zhao v. Guo Qiang Ye,*
  2015 WL 2170124 (D. Or. May 6, 2015) ............................................................12

*Core-Vent Corp. v. Nobel Indus. A.B.,*
  11 F.3d 1482 (9th Cir. 1993) ..........................................................................9, 10

*Daimler AG v. Bauman,*
  134 S. Ct. 746 (2014)............................................................................................6

*Foster v. Wilson,*
  504 F.3d 1046 (9th Cir. 2007) ...........................................................................18

*In re Glenfed, Inc. Sec. Litig.,*
  42 F.3d 1540 (9th Cir. 1994) (en banc) ..............................................................18

*Green v. APC,*
  136 Wn.2d 87 (1998)............................................................................................21

*Gurary v. Winehouse,*
  235 F.3d 792 (2d Cir. 2000)................................................................................18

- ii -

*Gutierrez v. Advanced Med. Optics, Inc.*,
  640 F.3d 1025 (9th Cir. 2011) ...................................................................................12

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
  105 Wn.2d 778 (1986) .............................................................................................23

*Hansen v. Combined Transp., Inc.*,
  2013 WL 5969863 (W.D. Wash. Nov. 7, 2013) ...................................................12, 14

*Harbor Cold Storage v. Strawberry Hill*,
  2009 WL 3765361 (W.D. Wash. Nov. 9, 2009) ...............................................6, 7, 8

*Hollinger v. Titan Capital Corp.*,
  914 F.2d 1564 (9th Cir. 1990) (en banc) ..............................................................16

*In re Infineon Techs. AG Sec. Litig.*,
  2011 WL 7121006 (N.D. Cal. Mar.17, 2011) .......................................................16

*Ives v. Ramsden*,
  142 Wn. App. 369 (2008) ........................................................................................20

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ..................................................................................19

*Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*,
  2015 WL 4523497 (W.D. Wash. July 27, 2015) ...................................................23

*Kosta Int'l v. Brice Mfg. Co., Inc.*,
  2014 WL 3847365 (W.D. Wash. Aug. 5, 2014) .......................................................5

*Loya v. Starwood Hotels & Resorts*,
  2007 WL 1991163 (W.D. Wash. July 6, 2007), *aff'd*, 583 F.3d 656 (9th Cir. 2009)................13

*In re Maxim Integrated Prods., Inc. Derivative Litig.*,
  574 F. Supp. 2d 1046 (N.D. Cal. 2008) .................................................................19

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)..................................................................................................19

*Morrison v. Nat'l Austrl. Bank*,
  561 U.S. 247 (2010)...........................................................................................15, 16

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1980)..................................................................................................11

*Premier Funding Grp. v. Aviva Life & Annuity Corp.*,
  2014 WL 6885732 (D. Ariz. Dec. 8, 2014) ..............................................................7

*R&K Real Estate Invs. v. Cao-Ly Inv. Corp.*,
  2010 WL 373869 (N.D. Cal. Jan. 29, 2010) .............................................................6

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- iii -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

*Raima, Inc. v. Myriad France*,
   2012 WL 6201709 (W.D. Wash. Dec. 11, 2012) ...............................................................12, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .............................................................................................6

*SEC v. Benger*,
   934 F. Supp. 2d 1008 (N.D. Ill. 2013) ...............................................................................16

*Segal Co. Inc. v. Amazon.com*,
   280 F. Supp. 2d 1229 (W.D. Wash. 2003)........................................................................23, 24

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).............................................................................................................17

*Unity House, Inc. v. N. Pac. Invs., Inc.*,
   918 F. Supp. 1384 (D. Haw. 1996) ....................................................................................16

*Villegas v. United States*,
   2012 WL 1801735 (E.D. Wash. May 16, 2012).................................................................20

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)..........................................................................................................7

*Warfield v. Alaniz*,
   453 F. Supp. 2d 1118 (D. Ariz. 2006) ...............................................................................10

*In re Watchguard Sec. Litig.*,
   2006 WL 2038656 (W.D. Wash. Apr. 21, 2006)...............................................................17

**Statutes**

15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act) ......................................... *passim*

15 U.S.C. § 78o (Section 15 of the Securities Exchange Act)..............................................13, 16, 22

15 U.S.C. § 78u-4(b)(1) ...................................................................................................17, 18

15 U.S.C. § 78u-4(b)(2) ...........................................................................................................17

15 U.S.C. §78aa (Section 27 of the Securities Exchange Act) ........................................................11

15 U.S.C. § 78cc (Section 29 of the Securities Exchange Act) ...................................................13, 16

28 U.S.C. § 1658(b) ...........................................................................................................18, 19

RCW 4.16.040(1) ....................................................................................................................20

RCW 4.16.080(2) ....................................................................................................................21

RCW 4.28.195 ...........................................................................................................................5

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- iv -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RCW 19.86.090 ........................................................................................................23

RCW 19.86.120 ........................................................................................................23

RCW 21.20.020 ........................................................................................................20

RCW 21.20.430 ........................................................................................................20

**Rules**

Fed R. Civ. P. 12(b)(2)..............................................................................................5

Fed. R. Civ. P. 12(b)(6)............................................................................................18

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- v -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

# I.     INTRODUCTION

This action concerns a dispute between a Korean brokerage firm and an investor who solicited that firm's assistance in buying and selling stock in Korean companies.  The investor, Delta Inn, Inc., alleges that the broker, Hyundai Securities Company, made unauthorized transactions in and otherwise mismanaged Delta Inn's trading account.  As a result, Delta Inn says, the account lost 90% of its value between 1999 and 2000, and has never recovered.

If this case goes forward, Hyundai Securities will show that Delta Inn's claims are meritless.  But this case should not go forward.  The Court should dismiss this action because Delta Inn has brought it in the wrong place at the wrong time.

The parties' relationship here is governed by two contracts, each of which has a Korean choice of law clause, and one of which also has a Korean forum selection clause.  Every stock transaction at issue – indeed, every transaction in Delta Inn's account – consisted of the purchase or sale of securities in a Korean company, traded on a Korean exchange.  The securities transactions took place in Korea, the parties met in Korea, and the parties communicated in the Korean language.  Hyundai Securities is a Korean company, subject to the jurisdiction of Korea's financial regulatory authorities.  Hyundai Securities conducts no business and has no presence in Washington State; its representatives have never come to Washington for any business purpose.

Several legal consequences flow from these basic geographical facts.  *First*, this Court lacks jurisdiction over Hyundai Securities.  Hyundai Securities did not purposefully avail itself of the benefits of this forum; nor do any colorable claims arise from Hyundai Securities' minimal contacts with Washington.  Meanwhile, litigating here would be enormously burdensome for Hyundai Securities – not to mention for the Court.

*Second*, based largely on the same factors, this action is subject to dismissal on *forum non conveniens* grounds.  An alternative forum exists in Korea, and that forum would in all ways be more suitable than this Court for the adjudication of the parties' dispute – which must be resolved under Korean law, and will turn largely on evidence in the Korean language.

*Third*, even if litigation in this forum were lawful and appropriate – and it is not – the same facts would warrant dismissal as a matter of law on the merits of Delta Inn's claims.  Two of the

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222
- 1 -
Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

six claims Delta Inn asserts, for alleged violation of the federal securities laws, fail because those laws do not apply extraterritorially and do not apply here.  A third claim, for breach of contract under Washington law, is defeated by the very contract on which it is based, as that contract is by its own terms governed by Korean law – not Washington law.  A fourth claim, for alleged breach of fiduciary duty under Washington law, fails for much the same reason.

The fifth and sixth claims are also fatally infirm, although for reasons that go beyond geography.  Delta Inn's claim for alleged violation of the Washington State Securities Act fails because there is no private right of action under the statutory provision on which Delta Inn relies.  The final claim, for alleged violation of Washington's Consumer Protection Act, fails because Delta Inn has not pled facts establishing the public interest element.

Each of the six claims also fails because it is untimely.  The applicable limitations periods range from two to six years; some run from the time of the alleged breach and some from plaintiff's discovery of the breach.  But the result is the same under all applicable periods.  Delta Inn's own allegations establish that it learned of Hyundai Securities' purported breaches of duty in 2000.  A claim asserted 15 years later is not timely.

Finally, Delta Inn's Section 10(b) claim fails under the heightened pleading standards of the Private Securities Litigation Reform Act, pursuant to which plaintiffs must provide factual allegations that are not only highly particularized but also give rise to a cogent and compelling inference of scienter.  No such inference can be drawn from the facts alleged here.  For all of these reasons, the Court should dismiss this action in its entirety.

## II.      BACKGROUND

Hyundai Securities is a financial services firm with its headquarters in Seoul and offices across the Republic of Korea.  Declaration of Min Gwan Park, ¶ 4.  Hyundai Securities was incorporated in 1962 and is now an affiliate and subsidiary of Hyundai Group, a Korean corporation.  *Id*.  Hyundai Securities is subject to regulation by Korea's financial regulatory authorities, namely the Financial Services Commission and the Financial Supervisory Service.  *Id.*

Hyundai Securities provides a wide range of financial services, including brokerage, securities dealing, underwriting, corporate finance, mutual funds, and online trading.  *Id*., ¶ 5.

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- 2 -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

Hyundai Securities does not provide financial investment services in the United States.  Hyundai Securities principally provides services relating to equity securities listed on Korean stock exchanges and to Korean issuers of debt securities.  *Id.*  Hyundai Securities has never operated within the State of Washington, nor have its employees visited Washington for purposes of conducting Hyundai Securities' business.  *Id.*, ¶ 7.

In November 1999, Min Gwan Park, then a deputy general manager at the Seoul/Trade Center Branch of Hyundai Securities, was contacted by Jin Geun Oh, an independent broker in Korea.  *Id.*, ¶ 8.  Mr. Oh was not and is not affiliated with Hyundai Securities.  *Id.*  Mr. Oh contacted Mr. Park to refer a potential client, Sung Lee Kim, to Hyundai Securities.  *Id.*  Mr. Oh told Mr. Park that he had previously been engaged in numerous transactions with Mr. Kim.  *Id.*  Mr. Oh forwarded to Mr. Park a Foreign Investment Registration Certificate issued to Delta Inn; such certificates permit people and entities outside of Korea to make investments in Korea.  *Id.*  Mr. Oh's and Mr. Park's discussions relating to Mr. Kim all took place in Korea, and were conducted in the Korean language.  *Id.*

Mr. Park first spoke to Mr. Kim when Mr. Kim telephoned Mr. Park at his office in Seoul.  *Id.*, ¶ 9.  Mr. Kim explained that he had called to discuss executing documents necessary to open an account with Hyundai Securities.  *Id.*  This conversation too was conducted in Korean.  *Id.*

After Mr. Park and Mr. Kim spoke, Hyundai Securities provided Mr. Kim with the documents necessary to open an account.  *Id.*  Thereafter, Hyundai Securities received, via facsimile, an executed copy of a Hyundai Securities Standing Agent Agreement, signed by Mr. Kim on behalf of Delta Inn and dated November 14, 1999.  *Id.*  Hyundai Securities also received, via facsimile, a partially executed copy of a Hyundai Securities Custodian Agreement.  *Id.*  The two agreements provided terms and conditions under which Delta Inn's account was to be managed by Hyundai Securities.  *Id.*, ¶ 9 & Exs. 1-2.  Both contracts contain choice of law clauses.  The clause in the Standing Agent Agreement provides that the contract is governed by Korean law; the clause in the Custodian Agreement provides that disputes between the parties are to be resolved under Korean law.  *Id.*, Ex. 1 ¶ 11; Ex. 2 at Art. 12.  The Custodian Agreement also contains a forum selection clause, pursuant to which the Seoul Civil District Court has exclusive jurisdiction

over disputes arising out of or relating to that contract.  *Id.,* Ex. 2 at Art. 12.

On November 17, 1999, Hyundai Securities opened an account for Mr. Kim under the name Delta Inn, Inc., an entity of which Mr. Kim is the principal.  *Id.*, ¶10.  The account was opened with South Korean won as currency – not with United States dollars.  *Id.*  The currency was provided to Hyundai Securities via KEB Hana Bank, a Korean bank with which Mr. Kim had an account.  *Id.*

Hyundai Securities maintained Delta Inn's account from the time it was opened until April 2014, when Delta Inn closed the account.  *Id.*, ¶12.  During this period, the transactions in the account consisted exclusively of purchases and sales of the stock of companies listed on a Korean stock exchange.  *Id.*  All transactions were marked based on Korean currency, and were completed by representatives of Hyundai Securities in Korea.  *Id.*, ¶¶ 13-14.  Hyundai Securities provided Delta Inn, via facsimile, with sales reports and account balances during this period.  *Id.*, ¶ 12.

Mr. Park and Mr. Kim have met in person once – in Seoul, in 2000, when Mr. Kim was visiting Korea.  *Id.* ¶ 11.  As in their telephone conversations, the two men conversed in Korean. *Id.*  Another Hyundai Securities representative, Hyo Gang Chun, met with Mr. Kim in Korea after Delta Inn had closed its account.  *Id.*

In its complaint, Delta Inn asserts that this Court has jurisdiction over Hyundai Securities based on Hyundai Securities' purported "enticement" and "solicitation" of an entity now located in Washington.  First Amended Complaint (AC) ¶¶ 3-4.[1]  Delta Inn goes on to describe a presentation at the Seattle Sheraton in the summer of 1998 or 1999, during which Korean government officials are alleged to have encouraged people with ties to Korea to make investments in Korean businesses.  AC ¶¶ 5-6.  This event was apparently the genesis of Delta Inn's transactions with Hyundai Securities, which Delta initiated later in 1999.  *See* AC ¶ 7.  Delta Inn does not, however, allege that any representative of Hyundai Securities attended the presentation at the Sheraton, or, indeed, had anything to do with it.  Nor *could* Delta Inn make any such allegation.  Hyundai Securities had no role in the Sheraton event whatsoever.  Park Dec., ¶ 7.  Similarly, while Delta Inn

---

[1] Delta Inn, an Oregon corporation, represented at the time it began transacting business with Hyundai Securities that it was located in Oregon, and it provided an Oregon mailing address in the Standing Agent Agreement.  Park Dec., Ex. 1 ¶¶ 2, 7; AC ¶ 1.  Notwithstanding these facts, Delta Inn now asserts that Hyundai Securities sent materials to it in Washington State.  AC ¶ 7.  While that assertion appears dubious, we accept it as true for purposes of this motion.

says that Mr. Kim was "put in contact" with Mr. Oh following the presentation, AC ¶ 7, Delta Inn does not and could not allege that Hyundai Securities had any role in arranging that contact.

Thus, while Delta Inn makes conclusory allegations about Hyundai Securities' supposed "inducement" of transactions by a Washington resident, the *facts* are that (1) Hyundai Securities had no role in the event that Delta Inn says spurred it to invest in Korean companies, and (2) it was Delta Inn that initiated contact with Hyundai Securities, not the other way around. Delta Inn reached out to Hyundai Securities in Korea – first through a third party, Mr. Oh, and then through its principal, Mr. Kim. Hyundai Securities did not seek out Delta Inn or Mr. Kim in Washington. Mr. Kim sought out Hyundai Securities in Korea, for the purpose of conducting securities transactions in Korea.

## III.   DISCUSSION

### A.   The Court Lacks Jurisdiction Over Hyundai Securities.

Delta Inn alleges that the Court has jurisdiction over Hyundai Securities because Hyundai Securities "solicited investment in the United States, of a United States corporation (Delta), for investment abroad (in Korea)." AC ¶ 3. But as we explain below, Delta Inn has come nowhere close to establishing the required basis for personal jurisdiction.

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), *plaintiff* bears the burden of demonstrating that jurisdiction is appropriate. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). In ruling on the motion, a court may look beyond the complaint to declarations and other appropriate evidence. *Id.*

### 1.   The Court Lacks Jurisdiction Under Washington's Long-Arm Statute.

We begin the analysis with Washington's long-arm statute, which permits the exercise of jurisdiction to the full extent of the Due Process Clause. *Kosta Int'l v. Brice Mfg. Co., Inc*., 2014 WL 3847365, at *1 (W.D. Wash. Aug. 5, 2014) (citing RCW 4.28.185). Under this analysis, jurisdiction may be either general or specific. *Id.*

The Court plainly does not have general personal jurisdiction in this case – that is, "all purpose" jurisdiction that arises from the defendant's contacts with the forum independent of the parties' dispute. General jurisdiction over a foreign corporation exists only where that

1   "corporation's affiliations with the State are so continuous and systematic as to render [it]

2   essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)

3   (internal quotation marks and citations omitted; brackets in original).  That is not the case here:

4   Hyundai Securities is incorporated and located in Korea, and no representative of the company has

5   come to Washington to transact the company's business.  Hyundai Securities does not have

6   "continuous and systematic" affiliations with Washington, let alone contacts so thoroughgoing that

7   the company could be considered to be "at home" here.

8       The analysis with respect to specific jurisdiction is somewhat more involved but leads to

9   the same result.  The Ninth Circuit applies a three-prong test:  Specific personal jurisdiction exists

10  if (1) the nonresident defendant purposefully avails itself of the laws of the forum state or

11  purposefully directs its activities there; (2) the plaintiff's claim arises out of the defendant's forum-

12  related activities; and (3) the exercise of jurisdiction is reasonable.  *Boschetto*, 539 F.3d at 1016.

13  With respect to the first prong, courts generally ask whether defendant has purposefully availed

14  itself of the laws of the forum when a lawsuit sounds in contract, and ask whether the defendant

15  has purposefully directed its conduct there when the suit sounds in tort.  *Schwarzenegger v. Fred*

16  *Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Plaintiff bears the burden of establishing

17  each of the first two prongs.  *Boschetto*, 539 F.3d at 1016.  If plaintiff cannot satisfy its burden, the

18  court does not have jurisdiction over the defendant.  If plaintiff succeeds under the first two prongs,

19  the burden shifts to defendant to disprove the third prong.  *Id.*  In this case, the answer under each

20  of the three prongs is the same:  Hyundai Securities is outside of the Court's jurisdiction.

21      ***Purposeful availment.***  Under settled law, "the formation of a contract with an out-of-state

22  defendant is not, standing alone, sufficient to establish purposeful availment of the [plaintiff's]

23  home forum." *R&K Real Estate Invs. v. Cao-Ly Inv. Corp.*, 2010 WL 373869, at *3 (N.D. Cal.

24  Jan. 29, 2010); *Harbor Cold Storage v. Strawberry Hill*, 2009 WL 3765361, at *4 (W.D. Wash.

25  Nov. 9, 2009) (same).  Rather, what is significant is the *subject matter* of the contract, along with

26  the events leading up to its formation.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79

27  (1985); *see also, e.g., Bowen v. Lancaster*, 2008 WL 1986036, at *3 (C.D. Cal. Apr. 30, 2008).  In

28  this case, Korea was the locus both of the parties' pre-contract interactions and of the performance

of the contract.  Delta Inn reached out to persons and entities in Korea; it was Mr. Kim who initiated contact with Hyundai Securities, first through Mr. Oh and then directly –  not the other way around.  Mr. Kim's object, and that of Delta Inn, was to invest, with Korean currency, through a Korean broker, in Korean companies, traded on Korean stock exchanges – activities made possible when Delta Inn obtained a certificate permitting it to make investments in Korea.  In such cases, where "the economic relationships created by the contract were to have found their fulfillment outside [the forum] state," the fact that a defendant has entered into a contract with a resident of that state does not support jurisdiction.  *Bowen*, 2008 WL 1986036, at *3 (internal citation and quotation marks omitted); *see also Harbor Cold Storage*, 2009 WL 3765361, at *5 (no purposeful availment where defendant did not "deliberately reach[ ] out to Washington to initiate" relationship, but instead a third party reached out to defendant, in defendant's home state, to do so).

The fact that Delta Inn is now located in Washington therefore does not render Hyundai Securities susceptible to jurisdiction here.  Nor would an allegation that Hyundai Securities' alleged wrongdoing had *effects* in the forum state do so.  *Id.* at *4.  The Supreme Court has emphasized that the focus under the purposeful availment or direction prong is on the defendant's contacts *with the forum* – not on the defendant's contacts with a plaintiff who happens to reside in the forum.  *Walden v. Fiore*, 134 S. Ct. 1115, 1124-25 (2014); *see also, e.g., Premier Funding Grp. v. Aviva Life & Annuity Corp*., 2014 WL 6885732, at **4-6 (D. Ariz. Dec. 8, 2014).  Hyundai Securities did not purposefully avail itself of the benefits of a Washington forum.  Indeed, it took steps to do the very opposite – to utilize the benefits of a *Korean* forum, for both parties.  Thus, each of the parties' two contracts contains a Korean choice of law clause – a strong indication that neither party sought the benefits of the local forum.  *See Burger King*, 471 U.S. at 481 (choice of law provision is relevant to the question of purposeful availment); *Harbor Cold Storage*, 2009 WL 3765361, at *5 (same).  The forum selection clause in one of the two contracts – the Custodian Agreement – plainly shows the same thing.  There was no purposeful availment here.[2]

---

[2] Because the two contracts between Delta Inn and Hyundai Securities form the centerpiece of the parties' relationship, we have focused on purposeful availment, which, as noted, is a prerequisite for personal jurisdiction in contract cases. But the result would be no different under the purposeful direction analysis applicable to tort claims:  Again, *both* parties' activities were aimed at Korea.  Facts such as these do not establish purposeful direction.  *See, e.g., Premier*

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222
- 7 -
Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

***Claims arising from contacts.*** Under the second prong of the Ninth Circuit's three-part test, courts must determine whether a plaintiff's claims arise from defendant's contacts with the forum. Delta Inn asserts that Hyundai Securities subjected itself to the jurisdiction of this Court "because it solicited investment in the United States, of a United States Corporation (Delta) for investment abroad (in Korea)." AC ¶ 3. According to Delta Inn, the act of "solicitation" by a foreign broker gives rise to jurisdiction because it constitutes a "direct violation" of United States securities laws unless the broker has previously registered with the SEC. *Id.* For several reasons, these assertions do not establish jurisdiction.

First, Delta Inn's claim that Hyundai Securities' alleged activities constituted "solicitation" is simply a legal conclusion, and as such is accorded no weight under controlling pleading standards. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The relevant facts, meanwhile – facts that emerge both from Mr. Park's declaration and from the complaint itself – show exactly the opposite of a solicitation by Hyundai Securities. The facts show that Delta Inn took the initiative to locate a Korean brokerage firm that could assist it in making investments in Korea, and that Hyundai Securities took no steps to secure Delta Inn's business until it had first been told that Delta Inn was interested in entering into a transaction with a Korean broker, and that Delta Inn had secured the permission of the Korean government to invest in Korean companies.

Second, Delta Inn appears to be confusing jurisdiction with the merits. Even if Delta Inn were correct in its legal conclusion that Hyundai Securities "solicited" Delta Inn's investment, this would not establish personal jurisdiction; at most, it would show that, *assuming* a court already had jurisdiction over Hyundai Securities, Delta Inn would be one step closer to satisfying what it believes is an element of its claim (that is, solicitation by an unregistered broker). From a jurisdictional perspective, however, the contacts on which Delta Inn relies – phone calls and the alleged provision of "marketing materials and company information," AC ¶ 7 – are plainly *not* sufficient. "[T]he mere use of interstate mail, telephone or wire services is itself insufficient to

---

*Funding*, 2014 WL 6885732, at *5 (no purposeful direction where defendant "did not reach out to [the forum state] to commit" the allegedly tortious act). Indeed, with respect to Delta Inn's two federal securities claims, the foreign nature of the parties' activities not only cuts against personal jurisdiction, it also puts the challenged conduct outside the reach of United States law. *Infra* at 15-16.

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

support assertion of personal jurisdiction." *Bowen*, 2008 WL 1986036, at *4.

Finally, even if Delta Inn were correct in equating a purported violation of the registration requirements of the Securities Exchange Act with a submission to jurisdiction, Delta Inn would not have shown that the Court has jurisdiction here.  And that is because, as we explain further below, the federal registration requirements on which Delta Inn relies simply *do not apply* in this case, where the stock transactions at issue occurred abroad and involved securities traded on a foreign exchange.  *See* pages 15-16, below.  The lynchpin of Delta Inn's jurisdictional claim is that by "soliciting" its investment, Hyundai Securities violated the registration provisions of the federal securities laws and thereby also subjected itself to the Court's jurisdiction.  But because the statutory provisions Hyundai Securities is supposed to have violated by soliciting Delta Inn's investment do not apply here at all, Delta Inn's attempt to establish jurisdiction by means of an allegedly improper solicitation collapses.

**Reasonableness of jurisdiction.**  We do not believe the Court needs to reach the third prong of the specific jurisdiction analysis, as Delta Inn has not carried its burden on the first two.  In the event the Court does reach this prong, however, we briefly explain why the exercise of jurisdiction would be highly unreasonable here.

In assessing the reasonableness of jurisdiction, courts look to (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state or country; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient juridical resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.  *Core-Vent Corp. v. Nobel Indus. A.B.,* 11 F.3d 1482, 1487-88 (9th Cir. 1993).  Each factor weighs against Delta Inn.

As to the first factor, Hyundai Securities, as noted, did not "interject" itself into the affairs of Washington at all.  Delta Inn instead interjected itself into Korean affairs, seeking a Korean broker that could aid it in investing in Korean companies, securing a Korean certificate that would enable it to do so, and meeting with Hyundai Securities representatives in Seoul.

As to the second factor, Hyundai Securities would be unfairly burdened by litigating in

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- 9 -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

Washington.  As we discuss more fully in connection with *forum non conveniens*, Hyundai Securities has no presence in Washington.  All relevant Hyundai witnesses are located in Korea.  Litigating in a foreign court – and in a foreign language – would be excessively burdensome.

As to the third and fourth factors, also as discussed further below, Korea has a strong interest in the adjudication of disputes involving brokers who are licensed and regulated under its laws.  Washington and the United States have little if any interest in such disputes.  Indeed, as we explain, the federal securities laws do not apply extraterritorially – and thus do not apply here.

The fifth factor also weighs heavily against jurisdiction.  Adjudicating the parties' dispute in this forum would be an exceedingly *in*efficient use of this Court's resources.  The Court would be required to apply Korean law, and both the Court and the parties would need to grapple with language and translation issues.

The sixth factor – the plaintiff's choice of forum – is given little if any weight.  *Core-Vent*, 11 F.3d at 1490 ("[a] mere preference on the part of the plaintiff for its home forum does not affect the balancing").  But even if it were of greater significance, it is far from clear that litigating in this Court would advance Delta Inn's interest in convenient and effective relief.  The strain that such litigation would put on the Court and its resources is not likely to redound to either party's benefit.

Finally, an alternative forum exists – and indeed, with respect to one of the parties' two contracts, was affirmatively chosen.  Taken separately or taken together, therefore, the relevant factors weigh heavily against the exercise of jurisdiction here.

### 2. The Court Lacks Jurisdiction Under Section 27 Of The Securities Exchange Act.

In addition to jurisdiction under Washington's long-arm statute, this Court may in certain cases have jurisdiction over defendants under the terms of a federal statute.  Although Delta Inn does not cite it, the Securities Exchange Act, which is the basis of two of the six claims in this case, includes a provision that allows for nationwide service of process.  15 U.S.C. § 78aa (Section 27 of the Securities Exchange Act).  The effect of this provision is to shift the analysis from the defendant's contacts with the forum state to the defendant's contacts with the United States as a whole.  *See, e.g., Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1127-28 (D. Ariz. 2006) (citing

authorities).  But for at least three reasons, that analysis would not confer jurisdiction over Hyundai Securities any more than the analysis under the long-arm statute does.

First, Delta Inn does not allege any that Hyundai Securities had any contacts with the United States *other than* those discussed above – the presentation at the Sheraton in Seattle (in which Hyundai Securities had no part), the telephone calls between Mr. Kim and Mr. Park, and the materials purportedly mailed into the forum.  Adding contacts with the United States outside of Washington, in other words, adds nothing.  Hyundai Securities would still not have purposefully availed itself of the benefits of the forum, and the exercise of jurisdiction, under the facts of this case, would still be unreasonable.

Second, the trigger for application of Section 27 is a claim under the Securities Exchange Act.  As we explain in more detail below, however, Delta Inn has not stated and cannot state a claim under either Section 10(b) or Section 15(a) of the Securities Exchange Act.  Those provisions do not apply extraterritorially and do not apply here.

Third, even if jurisdiction were proper under Section 27, *venue* would not be.  Venue exists under Section 27 where a defendant "is found or is an inhabitant or transacts business," or where the "act or transaction constituting the violation occurred."  15 U.S.C. §78aa.  Neither prong is satisfied here.  Hyundai Securities is not an inhabitant of Washington, does not transact business in Washington, and cannot be "found" in Washington.  Meanwhile, much of the conduct from which Delta Inn's purported securities claims arise – the alleged investments without authorization, the alleged "churning" of Delta Inn's account, AC ¶ 30 – occurred in Korea, not in Washington.  Section 27 thus cannot cure the fundamental jurisdictional defect in this case.

**B.**      **The Court Should Dismiss This Action Under The Doctrine of *Forum Non Conveniens.***

In the event the Court nevertheless concludes that it has jurisdiction over Hyundai Securities, the Court should dismiss this action on grounds of *forum non conveniens*.  That doctrine provides courts with discretion to override a plaintiff's choice of forum where an adequate alternative forum exists, and where factors relating to the parties' convenience, to the Court's administrative needs and abilities, or to both weigh in favor of that alternative forum.  *Piper*

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- 11 -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

1    *Aircraft Co. v. Reyno*, 454 U.S. 235, 248-49 (1980); *see also, e.g., Hansen v. Combined Transp.,*

2    *Inc.*, 2013 WL 5969863, at *1 (W.D. Wash. Nov. 7, 2013).  Here, the relevant factors tilt sharply

3    toward litigation in Korea as an alternative forum.

### 1.    Korea Is An Adequate Alternative Forum.

5          An adequate alternative forum plainly exists in this case.  "Ordinarily, to show an available

6    forum, all that is required is that the defendant is amenable to service of process in the foreign

7    jurisdiction."  *Gutierrez v. Advanced Med. Optics, Inc.*, 640 F.3d 1025, 1029-30 (9th Cir. 2011)

8    (citing *Piper*).  That requirement is satisfied here.  Delta Inn alleges that Hyundai is a Korean

9    corporation, organized under Korean law and with its principal place of business in Seoul.  AC ¶ 2.

10   Indeed, Delta Inn has taken steps to serve process on Hyundai Securities, in Seoul, in the current

11   action:  Delta Inn served a copy of the complaint in this case on Hyundai Securities at its place of

12   business in Seoul, apparently as a first step in attempting to serve Hyundai Securities under the

13   Hague Convention.  In any event, Hyundai Securities does not dispute that it is susceptible to

14   service in Korea.

### 2.    Public Factors Weigh In Favor Of Litigating In Korea.

16         Public considerations relevant to a *forum non conveniens* analysis fall into two categories:

17   those having to do with judicial concerns, and those having to do with the relative interests of the

18   two fora in the dispute.  *See, e.g., Chengwu Zhao v. Guo Qiang Ye*, 2015 WL 2170124, at *5 (D.

19   Or. May 6, 2015); *Raima, Inc. v. Myriad France*, 2012 WL 6201709, at *6 (W.D. Wash. Dec. 11,

20   2012) (citing *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001)).  In the present case, the

21   most critical fact is that, pursuant to the choice of law clauses in the two contracts at issue, the

22   parties' dispute must be resolved under Korean law.  As this Court and others have repeatedly

23   recognized, the need to apply foreign law weighs heavily in favor of dismissal on *forum non*

24   *conveniens* grounds.  *E.g., Raima*, 2012 WL 6201709, at *6 (dismissing claims governed by French

25   law where "[a]pplying French law would also impose a major burden on the court and on a jury. . .

26   At a minimum, the court would be required to translate French copyright law and attempt to create

27   a judicial environment in which it would make sense to apply it.  This could be incredibly costly

28   and time-consuming, not to mention frustrating"); *Chengwu Zhao v. Guo Qiang Ye*, 2014 WL

1    4851666, at *4 (D. Or. Sept. 29, 2014) ("The burden to this court [of] interpreting and correctly

2    applying Chinese law is prohibitive"; dismissing action on *forum non conveniens* grounds); *Loya v.*

3    *Starwood Hotels & Resorts*, 2007 WL 1991163, at *10 (W.D. Wash. July 6, 2007) ("It appears that

4    Mexican law may apply to some issues . . . . The need to apply foreign law strong[ly] favors

5    dismissal based on *forum non conveniens*"), *aff'd*, 583 F.3d 656 (9th Cir. 2009).[3]

6            The second public interest factor concerns the relative interests of Washington and Korea in

7    this dispute.  This factor also weighs in favor of dismissal, and for a related reason.  As discussed

8    in more detail below, the United States securities laws do not govern this dispute; encoded within

9    those laws is the determination that foreign securities transactions lie outside the territorial scope of

10   domestic securities legislation.  *Infra* at 15-16.  For the same reason that the domestic statutes do

11   not reach the securities transactions at issue here, the local forum has little if any interest in

12   resolving disputes arising from those transactions.  This litigation is anchored in trades made on the

13   Korean stock exchange, by a Korean brokerage firm governed by the Korean securities laws.  Park

14   Dec., ¶ 5.  Korea's interest in the resolution of this dispute is far greater than Washington's.

15           **3.      Private Factors Weigh In Favor Of Litigating In Korea.**

16           The private interest factors relevant to a *forum non conveniens* analysis relate primarily to

17   the relative burdens and convenience of the two fora for the parties.  The location of witnesses and

18   other sources of proof is most significant, as this bears on the parties' ability to present their cases

19   and the expenditures necessary to do so.  *See, e.g., Raima*, 2012 WL 6201709, at *5.

20           Like the public factors, the private factors in this case tilt sharply towards Korea.  The

21   Hyundai Securities employees who might be called as witnesses reside in Korea, as does the third-

22   party broker who introduced Delta Inn to Hyundai Securities.  Park Dec., ¶¶ 3, 8, 10.  All would

23   _____

24   [3] Although Delta Inn seeks to enforce one of the two contracts containing a choice of law clause – that is, the Standing
     Agent Agreement – Delta Inn also seeks, in the alternative, to *void* that contract.  AC ¶¶ 32-35.  Leaving aside the
25   inconsistency between this request and Delta Inn's central reliance on the substantive terms of the contract, *id.* ¶¶ 9-10,
     14, 19, Delta Inn's contention that the contract may be voided does not lessen the significance of the contractual choice
26   of law clause.  Delta Inn's claim that the contract is voidable under Section 29 of the Securities Exchange Act depends
     on the premise that Hyundai Securities violated Section 15(a) of the same Act.  *Id.* ¶¶ 33-35.  As we explain below,
27   however, Section 15(a) has no application to any transaction at issue here, and Hyundai Securities accordingly did not
     (and could not) violate it.  In any event, courts appropriately enforce choice of law clauses even in contracts ultimately
28   found to be void – and furthermore apply those clauses both to breach of contract claims and to other claims related to
     the performance of the contract.  *Alaska Airlines, Inc. v. United Airlines, Inc.*, 902 F.2d 1400, 1403 (9th Cir. 1990).

need to travel to Washington to attend trial.  As significantly, translators would have to be retained, both to make the Korean witnesses' testimony intelligible to the Court and jurors, and to translate the many relevant Korean-language documents.  *Id.*, ¶ 10.  Translators would also be needed for many pretrial proceedings, and would be indispensable in discovery.  As a practical matter, moreover, Hyundai Securities would need to retain two law firms – one in the United States and a second in Korea to assist U.S. counsel with various language-related and other logistical matters.  Indeed, Hyundai Securities has already been required to retain and use both American and Korean counsel in order to complete even the most routine pretrial tasks.

Relative to the burden on Hyundai Securities, the burden on Delta Inn of litigating in Korea would be slight.  Based on the allegations in the complaint, the only witness located in Washington appears to be Mr. Kim.  Mr. Kim is alleged to be the sole owner and manager of Delta Inn, and Mr. Kim alone is identified as having had any interaction with Hyundai Securities.  AC ¶¶ 1, 7, 11, 17.  Mr. Kim met with Hyundai Securities representatives in Korea, and he communicated with them in Korean, both in face-to-face meetings and on the telephone.  Park Dec., ¶¶ 9, 11.  Given Mr. Kim's facility with the Korean language and his history of travel to Korea – travel including meetings with Hyundai Securities about the subject matter of this litigation – a Korean forum would be far less burdensome for Delta Inn than a Washington forum would be for Hyundai Securities.

Indeed, before filing the complaint in this action, Delta Inn gave every indication that it would *prefer* to litigate in Korea.  Delta Inn entered into two contracts with Korean choice of law clauses, an action that this Court has recognized "tilts the balance" toward litigating in the forum whose law has been selected.  *Hansen*, 2013 WL 5969863, at *4.  As significantly, one of the two contracts – the Custodian Agreement – has a Korean forum selection clause.  Even if that clause is not strictly controlling on claims brought under the Standing Agent Agreement, it provides strong evidence as to where and how the parties intended to deal with any disputes that might arise between them.  And given that the two contracts are intertwined – they both deal with the management of Delta Inn's trading account by Hyundai Securities – it may not even be possible to litigate or adjudicate claims arising from the Standing Agent Agreement without also consulting and applying the terms of the Custodian Agreement.  But that must be done, according to the

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- 14 -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680

parties' expressed intention, by a court in Seoul.

In short, the location of the witnesses, the subject matter of the dispute, the law by which the dispute is to be resolved, and the myriad practical problems the Court would face in applying Korean law and dealing with Korean-language evidence all point very clearly to Korea as the appropriate forum for this litigation.

But in the event the Court nevertheless decides not to dismiss this action in its entirety on *forum non conveniens* (or jurisdictional) grounds, dismissal would still be the appropriate resolution.  In multiple respects, Delta has failed to state a claim on which relief could be granted. That is so with respect to each of Delta Inn's six claims, which we discuss serially below.

### C.     Delta Inn Fails To State A Claim Under The Federal Securities Laws.

#### 1.     The Statutes On Which Delta Inn Relies Do Not Apply Extraterritorially And Do Not Apply Here.

Delta Inn seeks to assert claims under Section 10(b) of the Securities Exchange Act, which prohibits certain deceptive acts and practices, and Section 15(a) of the same Act, which requires that certain securities brokers register with the Securities and Exchange Commission (SEC).  As a matter of law, however, neither statute applies to any of the transactions at issue here, and plaintiffs have accordingly failed to state a claim under the federal securities laws.

The matter is simply stated.  In 2010, the Supreme Court held in a landmark decision that Section 10(b) does not apply extraterritorially.  *Morrison v. Nat'l Austrl. Bank*, 561 U.S. 247 (2010).  Rather, the statute extends only to "purchases and sales of securities in the United States." *Id.* at 266-67.  As a practical matter, this means that Section 10(b) reaches only "transactions in securities listed on domestic exchanges" and "domestic transactions in other securities."  *Id.*

Delta Inn has not carried and cannot carry its burden of pleading facts that would come within either of *Morrison*'s two prongs.  To the contrary:  The facts alleged in the complaint establish that the relevant transactions do not fall within the territorial scope of Section 10(b). According to Delta Inn, the stock purchases at issue are investments in "high-risk *offshore* companies."  AC ¶ 1.1 (emphasis added).  The Hyundai Securities manager who was responsible for Delta Inn's account has confirmed that each of the transactions Hyundai Securities made on

Delta Inn's behalf was a purchase or sale of stock traded on a Korean exchange.  Park Dec., ¶ 12.

Such transactions simply cannot serve as the basis of a Section 10(b) claim.  "Under the Supreme

Court's holding in *Morrison*, § 10(b) of the Exchange Act does not apply to transactions on foreign

stock exchanges."  *In re Infineon Techs. AG Sec. Litig.*, 2011 WL 7121006, at *3 (N.D. Cal.

Mar.17, 2011) (dismissing, under *Morrison*, claims based on transactions made on the Frankfurt

Stock Exchange).

        Delta Inn's Section 10(b) claim does not come within *Morrison*'s second prong either:

Delta Inn has not alleged and cannot allege that any purchase or sale of the securities at issue

occurred within the United States.  Again, Delta Inn's allegations establish the opposite:  Delta Inn

alleges that it transmitted all of the funds in its account to Korea.  AC ¶¶ 11, 13.  Hyundai

Securities' account manager, meanwhile, has confirmed that the subsequent purchases and sales of

securities in Delta Inn's account were all made in Korea, and not in the United States.  Park Dec., ¶

12.  Under *Morrison* and its progeny, Section 10(b) does not reach these transactions.

        The same analysis disposes of Delta Inn's Section 15(a) claim.  Delta Inn asserts repeatedly

that Hyundai Securities – a Korean broker regulated by the Korean financial authorities – violated

Section 15(a) by failing to register with United States regulators.  AC ¶ 1.1, 3, 7, 33.  That

contention fails as a matter of law.  "[I]n light of *Morrison*, a broker's failure to register under

Section 15(a) of the [Securities Exchange] Act is not actionable in those cases where the ultimate

and intended purchase and sale was foreign and thus, itself, outside the scope of the Act."  *SEC v.

Benger*, 934 F. Supp. 2d 1008, 1013 (N.D. Ill. 2013).  That is precisely the case here – the

securities transactions at issue are incontrovertibly "foreign" as defined by *Morrison*.  Thus for the

same territorial reason that Delta Inn's Section 10(b) claim fails, its Section 15(a) claim fails too.[4]

---

[4] Delta Inn not only asserts – wrongly – that Hyundai Securities was required to register with the SEC under Section 15(a), it also claims that the Standing Agent Agreement is void under Section 29 as a consequence of Hyundai Securities' alleged failure to do so.  AC ¶¶ 32-35.  But Section 15(a) does not apply here, and Section 29 accordingly does not come into play.  We also note that the Ninth Circuit has long held that private plaintiffs have no right of action for purported violations of Section 15.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1578 (9th Cir. 1990) (en banc); *see also, e.g.*, *Unity House, Inc. v. N. Pac. Invs., Inc.*, 918 F. Supp. 1384, 1389 (D. Haw. 1996) (no private right of action to enforce either Section 15(c) or the SEC anti-churning regulation promulgated under that statute – a regulation Delta Inn invokes here, AC ¶ 27).

2.      **Delta Inn Fails To Comply With The Applicable Pleading Requirements.**

Delta Inn's Section 10(b) claim fails for a second reason as well.  This claim is governed by the Private Securities Litigation Reform Act (PSLRA), which imposes exacting pleading standards where a plaintiff asserts that a defendant made false or misleading statements.  In such cases, the complaint must "specify each statement alleged to have been misleading," along with facts constituting "the reason or reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).  And while in ordinary fraud actions a plaintiff may allege state of mind generally, the PSLRA requires securities fraud plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  A plaintiff creates the necessary "strong inference" of deliberate fraud "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 310 (2007).  Given these standards, "[a] Rule 10b-5 claim does not receive the traditional deference a court affords a complaint in resolving a motion to dismiss for failure to state a claim."  *In re Watchguard Sec. Litig*., 2006 WL 2038656, at *3 (W.D. Wash. Apr. 21, 2006).

Delta Inn has not met the PSLRA's rigorous pleading standards.  Delta Inn challenges Mr. Park's alleged statement to Mr. Kim that Hyundai Securities "would place Delta's funds in suitable low-risk, low-volatility investments."  AC ¶ 8.  According to Delta Inn, this statement later "proved to be false" when Hyundai Securities allegedly put a large portion of Delta Inn's funds into two companies (Q-Capital and Korea Information & Communications Co.) that Delta Inn now says were "volatile" or "high risk."  *Id.* ¶¶ 8, 14.  These allegations do not support the required compelling inference of scienter.   Indeed, they do not support a claim for securities fraud at all.  What Delta Inn has alleged here is the purported breach of a promise – the promise to make a certain kind of investment.  But as a legal matter, a breach of promise is critically distinct from fraud; by the same token, a breach of a promise relating to a securities transaction is critically distinct from securities fraud.  "It is well-settled that the failure to carry out a promise made in connection with a securities transaction is normally a breach of contract and does not justify a Rule

10b-5 action." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2[d] Cir. 2000) (internal quotation marks and citation omitted). A purportedly broken promise of the sort Delta Inn alleges "does not constitute fraud pursuant to [Rule] 10b-5 unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform." *Id.* (internal quotation marks and citations omitted); *see also, e.g., Foster v. Wilson*, 504 F.3d 1046, 1050-51 (9th Cir. 2007) (affirming dismissal of securities fraud claim based on alleged breach of agreement where plaintiffs did not allege that defendant had formed the intent not to perform when entering into the agreement). Delta Inn does not allege here that Hyundai Securities intended at the time of the challenged statement to breach the purported agreement. Much less does Delta Inn plead the *facts* that would be necessary, under the PSLRA, to create a compelling inference that Hyundai Securities harbored such an intent.

Delta Inn is no more successful in pleading falsity with the specificity required by the PSLRA than it is in pleading scienter. Under the PSLRA, securities plaintiffs must supply the *reason* a challenged statement is supposed to be false. 15 U.S.C. § 78u-4(b)(1). Here, in challenging Mr. Park's alleged promise to invest in low-risk stock, Delta Inn simply says in conclusory terms that the stock of two of the companies in its portfolio was not "low risk" but instead "volatile" or "high risk." AC ¶ 14. Such pleading-by-opposites has long been held to be insufficient: Plaintiffs do not provide the necessary explanation of falsity simply by saying that the true state of affairs was the opposite of whatever defendants said it was. *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1540, 1551-52 (9th Cir. 1994) (en banc). And that is all Delta Inn has done here. Delta Inn has not pled falsity with particularity any more than it has pled scienter with particularity.

### 3.      Delta Inn's Section 10(b) Claim Is Time-Barred.

There are yet further fatal defects in Delta Inn's Section 10(b) claim. The claim is time-barred on two separate grounds. A Section 10(b) claim must be brought "not later than the earlier of (1) 2 years after discovery of the facts constituting the violation, or (2) 5 years after such violation." 28 U.S.C. § 1658(b). Delta Inn's claim is barred under *both* prongs of the statute.[5]

---

[5] Although expiration of the statute of limitations is generally an affirmative defense, controlling law has long provided that dismissal under Rule 12(b)(6) is appropriate where plaintiffs' failure to comply with the limitations period appears

The statement Delta Inn challenges – that Hyundai Securities would invest its funds in low-risk stocks – is alleged to have been made in late 1999, when Delta Inn opened its account.  AC ¶¶ 8, 12.  The five-year repose period of Section 1658(b) began to run at that time.  *E.g., In re Maxim Integrated Prods., Inc. Derivative Litig.*, 574 F. Supp. 2d 1046, 1071 (N.D. Cal. 2008) ("the five-year statute of limitations period begins to run on the date of the false representation").  The five-year provision is absolute.  It is a bright-line rule, not subject to equitable tolling; it sets the outside temporal boundary of liability for fraud.  *See id.*  Here, the five-year period began to run in late 1999 and expired five years thereafter, in late 2004.  Delta Inn commenced this action more than a decade after that, in 2015.  This was far too late under any analysis.

The result is the same under the two-year provision, which begins to run on "discovery of the facts constituting the violation."  Delta Inn's own allegations establish when discovery occurred here.  Delta Inn says that four months after it opened its account – in other words, in March 2000 – the account had lost more than 50% of its value.  AC ¶ 15.  By December 2000, the portfolio had allegedly lost nearly 90% of its value ("roughly $2,650,000"), and Mr. Kim "flew to Korea to meet with Mr. Park."  *Id.* ¶ 16.  Delta Inn also says that "[a]ll of the trades made by Hyundai were made without the authorization or advance approval of Delta."  *Id.* ¶ 19 (emphasis added).  If this was indeed the case, then that fact cannot have been anything other than apparent to Delta Inn in 2000: Any reasonably diligent investor would notice that every single trade made in its account was made without its authorization.[6]  The two-year period thus began to run in December 2000 at the latest, and expired in 2002.  Delta Inn then waited for more than 12 years before commencing litigation.  Its claim is plainly time-barred.[7]

---

on the face of the complaint.  *E.g., Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  That is the case here.  We confine our discussion of the limitations defect in Delta Inn's federal securities claims to Section 10(b).  With respect to Section 15(a), there is no private right of action at all, and hence no statutorily provided limitations period.  *See* note 4, above.

[6] The two-year discovery prong of Section 1658(b) is subject to a "reasonable investor" standard.  That is, the two-year period begins to run when a plaintiff has discovered *or reasonably should have* discovered the facts constituting the alleged violation.  *Merck & Co. v. Reynolds*, 559 U.S. 633, 644-48 (2010).

[7] Delta Inn alleges that when Mr. Kim met with Mr. Park in Korea to discuss Delta Inn's investments, Mr. Park told him that the value of the account would eventually rebound.  AC ¶ 16.  This does not alter the limitations analysis; it certainly does not salvage Delta Inn's untimely claim.  The question under the two-year provision of Section 1658(b) is when plaintiff  discovered or should have discovered the facts constituting the alleged violation.  Here, the alleged

**D.      Delta Inn Fails To State A Claim Under The Washington State Securities Act.**

Delta Inn's third claim, for alleged violation of the Washington State Securities Act (WSSA), is easily disposed of.  Delta Inn asserts this claim under RCW 21.20.020, an antifraud provision that applies to certain persons who provide investment advice.  AC ¶¶ 37-38.  Delta Inn also cites RCW 21.20.430, which allows private individuals to sue securities brokers who have allegedly violated certain provisions of the WSSA.  *Id.* ¶ 39.  RCW 21.20.020, however, is not among the provisions listed in RCW 21.20.430, and the consequence of this is that private individuals are barred from asserting claims based on the alleged violation of RCW 21.20.020.  *See Ives v. Ramsden*, 142 Wn. App. 369, 390 (2008) (list contained in RCW 21.20.430 is exclusive, such that private parties may not assert claims against brokers based on the violation of provisions of the WSSA not enumerated there).  Delta Inn has failed to state a claim under the WSSA.[8]

**E.      Delta Inn Fails To State A Claim for Breach of Contract.**

The analysis is similarly straightforward with respect to Delta Inn's breach of contract claim, which again fails on limitations grounds.  Claims based on the alleged breach of a written contract are governed by a six-year limitations period.  RCW 4.16.040(1).  Save in certain cases involving latent construction defects, the six-year period begins to run on the alleged breach of contract, regardless of when plaintiff discovered it.  *E.g., Charm Floral v. Wald Imports, Ltd.*, 2012 WL 424491, at *5 (W.D. Wash. Feb. 9, 2012) ("the Washington Supreme Court has consistently held that accrual of a contract action occurs on breach and that the discovery rule does not apply to actions for breach of contract") (internal quotation marks and citations omitted); *Villegas v. United States*, 2012 WL 1801735, at *4 (E.D. Wash. May 16, 2012) ("Washington courts do not apply the discovery rule to cases involving written contracts, but have instead consistently held that accrual

---

violation is that Hyundai Securities bought high-risk stock and entered into securities transactions without Delta Inn's authorization.  AC ¶ 15.  This would have been apparent to Delta Inn as soon as it saw an account statement.  Delta Inn did not need to wait and see what the precise scope of its damages was in order to know that a violation had (purportedly) occurred.

[8] Even if Delta Inn's claim did not fail on this ground, it would be barred because it is untimely.  Claims based on violations of those provisions of the WSSA that *do* give rise to a private right of action under RCW 21.20.430 must be brought within three years of a reasonable plaintiff's discovery of the purported violation.  RCW 21.20.430(4)(b).  As discussed above, a reasonable plaintiff would have discovered the alleged violations in this case in 2000.  *Supra* at 19.

of a contract action occurs on breach") (internal quotation marks and citations omitted).

Delta Inn alleges that Hyundai Securities breached the Standing Agent Agreement beginning in the four months after November 1999, when Hyundai Securities purportedly made unauthorized trades in Delta Inn's account.  AC ¶¶ 15-16.  The six-year limitations period began to run at that time – in early 2000 – and expired in early 2006, more than 9 years before Delta Inn commenced this litigation.  Delta Inn's breach of contract claim is accordingly time-barred.

Delta Inn may contend in response that each stock transaction Hyundai Securities executed on its behalf constituted a separate breach, and that it therefore may still assert a contract claim based on allegedly unauthorized trades made between 2009 (six years before it commenced litigation) and 2014 (when it directed Hyundai Securities to close its account).  But even a more limited claim along these lines would be foreclosed – although for a different reason.  Delta Inn's contract claim, as noted, is based on Washington law.  AC ¶ 1.3.  But the very contract Delta Inn seeks to enforce provides, as discussed above, that it is governed by Korean law.  *Supra* at 3; Park Dec. ¶ 9 & Ex. 1 ¶ 11.  The factually related Custodian Agreement contains a similar provision, pursuant to which disputes arising out of or related to that contract are to be settled in accordance with Korean law.  *Supra* at 3; Park Dec. ¶ 9 & Ex. 2, Art. 12.  These provisions foreclose Delta Inn's contract claim in its entirety.  Delta Inn cannot state a claim under Washington law for breach of a contract that according to its own provisions is governed by Korean law.  *See, e.g., AJ Mgmt. Consulting v. MBC FZ-LLC*, 2014 WL 2878891, at *5 (N.D. Cal. June 24, 2014) (dismissing claim for breach of the implied covenant of good faith and fair dealing under California law where contracts at issue contained choice of law clauses requiring agreements to be interpreted in accordance with the law of the United Arab Emirates).  Delta Inn's breach of contract claim is defeated by the very contract Delta Inn purports to enforce.

### F.       Delta Inn Fails To State A Claim for Fiduciary Breach.

Delta Inn's next claim, for alleged breach of fiduciary duty, fails on largely the same grounds as Delta Inn's contract claim.  Under Washington law, claims for fiduciary breach must be brought within three years of accrual.  RCW 4.16.080(2).  Accrual occurs when a reasonably diligent plaintiff would have known of the existence of the claim.  *E.g., Green v. APC*, 136 Wn.2d

87, 95 (1998).  Here, as discussed above, discovery occurred (or should have occurred) in 2000, when Delta Inn learned that its account had lost first 50% and then nearly 90% of its initial value, and when any reasonably diligent investor would have become aware of the principal purported facts on which Delta Inn's fiduciary breach claim rests – namely, that the trades in its account were made without the ostensibly necessary authorization, and that some trades were made in high-risk stocks.  *Supra* at 19; AC ¶¶ 54-55 ("Hyundai's failure to obtain authorization from Delta . . . constitutes a breach of its fiduciary duty"; "Hyundai's failure to trade the assets . . . in a safe, reasonable and low-risk manner constitutes a breach of its fiduciary duty").  The limitations period expired three years later, in 2003.  Delta Inn's claim, filed in 2015, is plainly time-barred.

To the extent Delta Inn may assert that each purportedly improper trade constituted a separate breach, and that alleged breaches made less than three years before it commenced this litigation are actionable, the claim again fails for reasons discussed above.  Delta Inn's fiduciary breach claim is largely coextensive with its contractual breach claim.  Both are based on the allegation that Hyundai Securities made trades without authorization and in a manner that was not "safe and reasonable."  AC ¶¶ 49-50 (breach of contract); *id.* ¶¶ AC 54-55 (fiduciary breach).  Delta Inn further cites the Standing Agent Agreement as the source of the fiduciary duties allegedly breached.  *Id.* ¶ 49.  But that agreement, of course, contains a choice of law clause, and such clauses apply both to claims for breach of contract and to other claims based on the performance of the contract.  *Alaska Airlines*, 902 F.2d at 1403.  Delta Inn's fiduciary breach claim therefore fails for the same reason its contract claim fails:  Delta Inn has asserted a Washington law claim where Washington law simply does not apply.[9]

### G.   Delta Inn Fails To State A Claim Under Washington's Consumer Protection Act.

Delta Inn's final claim, for alleged violation of Washington's Consumer Protection Act (CPA), is also barred by the applicable limitations period, which is four years from the accrual of

---

[9] Even if Washington law were relevant to the claim, moreover, its is far from apparent how the parties could litigate, and the Court adjudicate, a Washington law claim arising from duties created by a contract governed by Korean law. At the very least, the anomalous nature of such a claim vividly illustrates the difficulties that would ensue if this case were to move forward in this forum – and it therefore weighs heavily in favor of dismissal on *forum non conveniens* grounds if not on the merits.

the claim.  RCW 19.86.090, 19.86.120.  Like most of its claims, Delta Inn's CPA claim is based on the allegations that Hyundai Securities made unauthorized trades and invested Delta Inn's funds in improperly high-risk stocks.  AC ¶ 43.  As discussed, a reasonable investor would have discovered the purported violations in 2000.  The limitations period expired four years later, in 2004.

Delta Inn's CPA claim fails for a second reason as well.  One of the five elements of a CPA claim is a "public interest impact," and Delta Inn has not pled facts establishing that element here.[10]  Delta Inn says that Hyundai Securities' purported acts "have a public interest impact because . . . Hyundai actively solicited Delta in Washington State, and it is likely that Hyundai through its English-language brochures solicited other individuals in Washington State."  AC ¶ 45.  This is insufficient. "Where a transaction can be characterized as essentially a private dispute rather than a consumer transaction, it may be difficult to show a public interest in the subject matter." *Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*, 2015 WL 4523497, at *4 (W.D. Wash. July 27, 2015) (internal quotation marks omitted).  And "[a] dispute over the provision of professional services is an example of such a private dispute." *Id*.  That is exactly the nature of the dispute here; no fact Delta Inn alleges lifts it from the purely private realm.

This Court's characterization of the facts in another case in which it dismissed a CPA claim precisely captures the situation here:

> In this case, the material portions of the complaint generally detail the formation and breach of a contractual relationship between only [plaintiff] and defendant. Plaintiffs never assert that defendant contacted members of the general public, nor do plaintiffs claim that defendant executed contracts with any other parties . . . . [Moreover], the fact that defendant may have engaged in additional commercial dealings does not indicate that its activities have the potential to deceive a substantial portion of the public.

*Segal Co. Inc. v. Amazon.com*, 280 F. Supp. 2d 1229, 1232-33 (W.D. Wash. 2003) (internal quotation marks and citations omitted).  The same is true here:  Nothing in the complaint suggests that Hyundai Securities interacted with even a single other Washington resident – and even if it had done so, Delta Inn pleads nothing showing that Hyundai Securities' activities deceived or had the

---

[10] The five elements of a CPA claim are (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) a public interest impact, (4) injury to plaintiff, and (5) causation.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).

capacity to deceive others.

Delta Inn seeks to transcend the factual limitations of its claim by speculating that it is "likely" that Hyundai Securities "solicited" other persons in Washington, based on the fact that some of Hyundai Securities' materials are printed in English.  AC ¶ 45.  Even if that inference were plausible – and Delta Inn pleads no additional facts supporting it – it would not help Delta Inn.  As this Court has previously held, solicitation in itself does not establish a public impact.  Only if the alleged solicitation is *widespread*, or if a defendant targets Washington residents *at random*, would such activities potentially implicate the public interest.  *Segal*, 280 F. Supp. 2d at 1233-34 (discussing authorities).  The record here shows exactly the opposite of such broad-based solicitation.  Indeed, the relevant facts show not solicitation but *referral*, and they further show that Hyundai Securities entered into a relationship with Delta Inn only after learning, first from Mr. Oh and then from Mr. Kim himself, that Delta Inn wanted to do business with a Korea brokerage firm for the purpose of investing in Korean companies.  This does not show the required impact on the Washington public or Washington consumers.

## IV.    CONCLUSION

For all of the reasons stated above, the Court should dismiss this action in its entirety.

Dated:  January 25, 2016                              Respectfully submitted,

/s/ *Robin Wechkin*
_____

Robin Wechkin, WSBA #24746
SIDLEY AUSTIN LLP
701 Fifth Avenue, Suite 4200
Seattle, WA 98104
Telephone:  (206) 262-7680
 rwechkin@sidley.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2016 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notification.

Dated:  January 25, 2016

/s/     Robin E. Wechkin
Robin E. Wechkin
Sidley Austin LLP
701 Fifth Street, Suite 4200
Seattle, WA 98104
Telephone: (206) 262-7680
rwechkin@sidley.com

Defendant's Motion to Dismiss Amended Complaint
Case No. 15-Cv-01222

- 25 -

Sidley Austin LLP
701 Fifth Ave., Suite 4200
Seattle, WA  98104
206.262.7680